#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF ILLINOIS
#### EASTERN DIVISION

| | |
|---|---|
| LUCA BENUSSI, HUGH CURRY, HARJOAT FLORA, KAREN MILLS, SUSANNE PEDERSON, AND LOUISE STEELE,<br><br>              Plaintiffs,<br><br>   v.<br><br>THE BOEING COMPANY,<br><br>             Defendant. | No. _____ |

### NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1333(1), 1332(a), 1441, and 1446, The Boeing Company ("Boeing") hereby removes to the United States District Court for the Northern District of Illinois the case styled *Benussi v. The Boeing Co.*, currently pending in the Circuit Court of Cook County, Illinois County Department, Law Division, as Case No. 2021 L 007305. In further support of this Notice of Removal, Boeing states as follows:

**I.    Background and Procedural History**

1.    Plaintiffs, citizens and residents of the United Kingdom, filed their complaint against Boeing, a Delaware corporation headquartered in Chicago, on July 20, 2021, in the Circuit Court of Cook County, Illinois, County Department, Law Division, as Case No. 2021 L 007305. *See* Ex. A, Compl., ¶¶ 1–7.

2.    Plaintiffs assert claims arising from three alleged "contaminated air event[s]" while working as flight attendants aboard a Boeing aircraft during British Airways Flight 66 on July 28, 2019, from Philadelphia, Pennsylvania to London (Heathrow), the United Kingdom. Ex. A ¶¶ 17–28.

3. The Complaint alleges that three contaminated air events occurred during the flight. First, "[w]hile the aircraft was still on the ground in Philadelphia, moving away from the terminal and before take-off, there was a contaminated cabin air event, exposing Plaintiffs, other flight attendants, and passengers to toxic fumes from the bleed-air system of the aircraft." Ex. A ¶ 19. During this alleged event, "flight attendants and passengers on the aircraft noticed a strange smell, which Plaintiffs immediately reported to Captain Kevin Darby and First Officer David Ingram Hill and described as a 'damp, sweaty sock' odor." *Id.* ¶ 20. Second, "[a]s the aircraft started its ascent, and while the aircraft was still over Pennsylvania, Plaintiffs and passengers were exposed to contaminated air again and the smell worsened." *Id.* ¶ 22. Finally, "[d]uring the aircraft's final descent into London, after the twenty-minute call and when the aircraft was over British soil, the smell returned and the flight attendants were once more exposed to contaminated air." *Id.* ¶ 24.

4. Plaintiffs claim that the bleed air system of the Boeing aircraft was defective in design and allowed "toxic" chemicals to circulate in the aircraft cabin, causing short- and long-term health effects and economic and non-economic injuries. *Id.* ¶¶ 26–28. They assert claims for strict liability, negligence, and *res ipsa loquitur*. *Id.* ¶¶ 72–89.

5. Copies of all process, pleadings, and orders served on Boeing in the state court action are attached as Exhibit B.

6. Venue is proper for removal to this Court because it is the United States District Court for the district and division embracing the place where the state action was pending. *See* 28 U.S.C. § 1441(a).

7. In accordance with 28 U.S.C. § 1446(d), Boeing is today serving this Notice of Removal on Plaintiffs' counsel and filing a copy of this Notice with the Clerk of the Circuit Court of Cook County, Illinois.

## II. Grounds for Removal

8. A civil action brought in state court is removable if the district court has original jurisdiction over it. 28 U.S.C. § 1441(a). As set forth below, this Court has jurisdiction based on admiralty, 28 U.S.C. § 1333(1), and diversity, 28 U.S.C. § 1332(a).

### A. Admiralty Jurisdiction

9. Federal district courts "have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

10. A civil case is one of "admiralty jurisdiction" if it satisfies "conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The location prong of admiralty jurisdiction is satisfied if the alleged "tort occurred on navigable water." *Id.* And the connection prong is satisfied when (1) the incident had "a potentially disruptive impact on maritime commerce" and (2) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal quotation marks and citations omitted); *see also Lu Junhong v. The Boeing Co.*, 792 F.3d 805, 813–17 (7th Cir. 2015) (holding admiralty jurisdiction removal by Boeing was proper in case involving alleged torts occurring during transoceanic flight); *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 817–18 (N.D. Ill. 2021) (holding admiralty jurisdiction removal by Boeing was proper in case involving an alleged fume event on a transoceanic flight). Both requirements are satisfied here.

11. Although Flight 66 was transoceanic, the Complaint alleges that all three contaminated cabin air events occurred over land—specifically, "on the ground in Philadelphia," "[a]s the aircraft started its ascent, and while the aircraft was still over Pennsylvania," and

3

"[d]uring the aircraft's final descent into London, after the twenty-minute call and when the aircraft was over British soil." Ex. A ¶¶ 17, 19, 22, 24.

12. The Complaint's location-related allegations differ from accounts of the alleged contaminated cabin air events that British Airways produced on February 15, 2022, which report that at least two of the alleged events did not happen within the narrow timeframes Plaintiffs allege.[1] Notably, one Cabin Safety Report submitted by a Flight 66 crew member says that "[a]bout 45-1hour in flight after leaving Philadelphia international airport . . . [Plaintiff] Louise Steel became aware of a fume smell in the world traveller cabin."[2] And Plaintiff Harjoat Flora wrote in another Cabin Safety Report that "[a]bout 50min to land in LHR [London Heathrow] the smell return[ed] differently stronger and more pungent."[3]

13. Although the British Airways documents do not explicitly say whether the airplane was over land or water during the alleged contaminated cabin air events, that information can be determined from automatic dependent surveillance–broadcast ("ADS-B") position data. While in flight, aircraft equipped with ADS-B equipment periodically broadcast information, including the aircraft's current position, altitude, and velocity, through an onboard transmitter to suitably equipped air traffic control ground stations and/or ADS-B transceivers on satellites. This data can be used by air traffic control services to monitor aircraft and manage air traffic flow. It can also later be used to reconstruct an aircraft's flight path and determine its approximate location at particular points in time.

---

[1] British Airways produced the documents in response to a subpoena Plaintiffs served in October 2021. Plaintiffs did not copy Boeing on the subpoena, and Boeing first learned of Plaintiffs' request when British Airways sought a stay on January 12, 2022.

[2] "Louise Steel" is, upon information and belief, the same "Louise Steele" who is a plaintiff in this lawsuit.

[3] The Cabin Safety Report is signed by cabin crew member "Harj Flora." Upon information and belief, "Harj Flora" is the same "Harjoat Flora" who is a plaintiff in this lawsuit.

14. As plotted on the Google Earth Pro application, ADS-B data for the flight in question (British Airways Flight 66 on July 28, 2019) shows that the flight headed northeast out of Philadelphia, and that at approximately 45 minutes after takeoff, the aircraft was travelling over the Gulf of Maine. The Gulf of Maine is a navigable gulf of the Atlantic Ocean, off the coast of Maine and bounded by Cape Cod to the southwest and Nova Scotia to the northeast,[4] as shown in the below graphic. The marker identifies the location of the flight as it was outbound from Philadelphia and had been flying for approximately 45 minutes.



15. Thereafter, according to the ADS-B data, the aircraft continued on a northeast trajectory, across Northern Canada and then out over the Atlantic Ocean.

---

[4] *See* "Gulf of Maine," WIKIPEDIA, *available at*: https://en.wikipedia.org/wiki/Gulf_of_Maine.

16. The ADS-B data also shows that at approximately 50 minutes prior to landing at London Heathrow International Airport, the aircraft was travelling over St George's Channel,[5] a navigable sea channel between Ireland and Wales, as shown below.



17. Thus, the ADS-B data shows that when Plaintiff Louise Steel "became aware of a fume smell" "[a]bout 45-1hour in flight after leaving Philadelphia international airport," Flight 66 was traveling over navigable waters—namely, the Gulf of Maine. Similarly, the ADS-B data confirms that the aircraft was traveling over St George's Channel (which is also navigable waters) when Plaintiff Harjoat Flora reported that the "smell returned" "[a]bout 50min to land in LHR."

---

[5] *See* "St George's Channel," WIKIPEDIA, *available at:* https://en.wikipedia.org/wiki/St_George%27s_Channel.

Accordingly, the alleged "tort[s] occur[ed]" at least in part "on navigable waters."[6] *Grubart*, 513 U.S. at 534. The first requirement for establishing admiralty jurisdiction is therefore satisfied. *Id.*; *Lu Junhong*, 792 F.3d at 815–16 (explaining that § 1333(1) does not "require[] the whole tort to occur on the water," and finding admiralty jurisdiction based on claims relating to Boeing's aircraft autothrottle system design and performance while aircraft was over navigable water); *Curry*, 542 F. Supp. 3d at 813 (location test satisfied when plaintiffs' injuries occurred over the North Sea).

18. With respect to the "connection" prong of admiralty jurisdiction, the alleged contaminated cabin air events had "a potentially disruptive impact on maritime commerce" and there was a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534.

19. First, the "potentially disruptive impact" test is satisfied. Plaintiffs allege that the aircraft had a design defect that caused crew and passengers to become ill during a flight from Philadelphia to London, and "[t]oxic air conditions aboard a transoceanic flight . . . have the potential to cause such a disruption" for purposes of admiralty jurisdiction. *Curry*, 542 F. Supp. 3d at 814 (holding that admiralty jurisdiction existed when an alleged fume event occurred during a transoceanic flight); *see also Tagliere v. Harrah's Illinois Corp.*, 445 F.3d 1012 (7th Cir. 2006) (even a gambler falling off a barstool in a riverboat casino could be sufficiently disruptive for admiralty jurisdiction).

---

[6] For purposes of admiralty law, "a tort is deemed to occur where the injury occurs." *Taghadomi v. Extreme Sports Maui*, 257 F. Supp. 2d 1262, 1269 (D. Haw. 2002), *aff'd sub nom. Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005). The same is true under any potentially applicable state law. *See, e.g.*, *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 2020 WL 762493, at *3 (Del. Feb. 17, 2020) (Delaware); *Beigel & Sandler v. Weinstein*, 1992 WL 357523, at *2 (N.D. Ill. Nov. 24, 1992) (Illinois); *Lewis v. Bours*, 835 P.2d 221, 225 (Wash. 1992) (Washington). Accordingly, this particular issue does not require the Court to examine or choose among any potentially applicable bodies of substantive law, and Boeing does not waive, but rather expressly reserves, the right to invoke and/or object to the application of any particular body of substantive law in the future, as may be appropriate to the facts and posture of the case. By filing this Notice of Removal, Boeing does not waive any other rights, privileges, or defenses and does not concede that this is an appropriate or convenient forum for resolution of these or any other claims.

20. Second, a "substantial relationship to traditional maritime activity" exists. As explained in *Lu Junhong*, before the advent of aircraft, a transoceanic journey would have been made by an ocean-going vessel. That makes Flight 66 sufficiently related to traditional maritime activity to warrant the exercise of admiralty jurisdiction. *Lu Junhong*, 792 F.3d at 816 ("Asiana 214 was a trans-ocean flight, a substitute for an ocean-going vessel—as flights from the contiguous United States to and from Alaska, Hawaii, and overseas territories also would be—and thus . . . this situation 'might be thought to bear a significant relationship to a traditional maritime activity.'"); *see also Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984) (flight from Bahamas to Florida within admiralty jurisdiction); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1983) (flight from California to Hawaii within admiralty jurisdiction); *Roberts v. United States*, 498 F.2d 520, 524 (9th Cir. 1974) (flight from California to Vietnam within admiralty jurisdiction); *Curry*, 542 F. Supp. 3d at 815 (transoceanic flight satisfied the substantial relationship test).

**B.    Diversity Jurisdiction**

21. The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and there is diversity between the plaintiffs, on the one hand, and the defendants, on the other. 28 U.S.C. § 1332(a); *Ashenden v. Lloyd's of London*, 934 F. Supp. 992, 995 (N.D. Ill. 1996) ("Section 1332 has been interpreted to require 'complete diversity,' that is, each and every defendant must have different citizenship from each and every plaintiff."). Both requirements are satisfied here.

22. According to the Complaint, Plaintiffs seek damages in excess of $50,000 on each of their four claims, totaling in excess of $200,000. Ex. A ¶¶ 76, 80, 87, 89. Plaintiffs also allege short-term and long-term health effects, loss of past and future wages and wage-earning capacity,

8

and other economic and non-economic damages. *Id.* at ¶¶ 27–28. Therefore, the amount-in-controversy requirement is satisfied.

23. Plaintiffs allege they are citizens of the United Kingdom. Ex. A ¶¶ 1–6. Boeing is a Delaware corporation with its corporate headquarters in Illinois. *Id*. ¶¶ 7, 29. Therefore, there is complete diversity of citizenship.

24. Notably, the federal removal statute provides that a "civil action otherwise removable solely on the basis of [diversity jurisdiction] . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

25. Here, Boeing has removed based on the Court's admiralty jurisdiction, as well as diversity. Therefore, the forum state defendant prohibition of § 1441(b)(2)—which applies only to removal "solely" on diversity—is inapplicable. *See Lu Junhong*, 792 F.3d at 817–18; *Curry*, 542 F. Supp. 3d at 820; *Crisanto v. Caladan Oceanic, LLC*, 2018 WL 3641703, at *3 (N.D. Tex. Aug. 1, 2018) (defendants removing admiralty cases under §§ 1333 and 1441 need only show that they meet the jurisdictional requirements of diversity jurisdiction; forum-defendant rule is inapplicable in this scenario); *Boakye v. NCL (Bah.) Ltd.*, 295 F. Supp. 3d 1342 (N.D. Ga. 2018) ("Whereas before the amendment [to 28 U.S.C. § 1441], *no* case could be removed if a defendant was in his home state, *unless* there was a federal question, now, *all* cases involving a home state defendant in which a federal court could have had original jurisdiction can be removed *unless* jurisdiction is based solely on diversity.") (emphasis in original).

### III. Removal Is Timely

26. This removal is timely because the removal clock under 28 U.S.C. § 1446(b)(1) has not started. Boeing is removing this case at this time in an abundance of caution because the facts

9

relevant to jurisdiction can be ascertained through an analysis of the information in documents that British Airways produced in response to Plaintiffs' subpoena.

27. Normally, a defendant has 30 days to remove after service of the complaint. 28 U.S.C. § 1446(b)(1). But "[t]he 30-day removal clock is triggered" only if the complaint "affirmatively and unambiguously reveals that the case is or has become removable." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821 (7th Cir. 2013). That it might be possible to infer or deduce a potential basis for removal is not enough. *See, e.g.*, *Copeland v. N. Am. Pipe Co.*, 2018 WL 557928, at *2 (W.D. Wis. Jan. 24, 2018) (in light of *Walker*, prior decisions holding that the 30-day deadline is triggered "from a reasonable and commonsense reading of the complaint" or from "conspicuous clues" "are no longer good law").

28. Moreover, it is only the complaint or documents filed or formally received in the case that matter for purposes of triggering the 30-day clock. The 30-day clock does not begin to run unless and until the defendant receives some "pleading or other litigation paper facially revealing that the grounds for removal are present." *Walker*, 727 F.3d at 823–24; *see* 28 U.S.C. § 1446(b)(3). Aside from the complaint, the only "other paper" that counts is "litigation materials actually received by the defendant or filed with the state court during the course of litigation." *Id*. at 825. If the defendant does not receive such a paper, "the removal clock never actually start[s] to run." *Id.* "The defendant's subjective knowledge of any of th[e] [jurisdictional] facts is immaterial." *Hostetler v. Johnson Controls, Inc.*, 2016 WL 3662263, at *3 (N.D. Ind. July 11, 2016) (citing *Walker*, 727 F.3d at 825).

29. Boeing has not, to date, been served with a qualifying pleading or "other paper" unambiguously revealing the grounds for this Court to exercise admiralty jurisdiction. Instead, the Complaint states (inaccurately, as Plaintiffs' recently-disclosed statements in the British Airways

production and Boeing's review of the ADS-B data make clear) that all of the alleged air contamination events occurred while the aircraft was over land. *See* Ex. A ¶¶ 19, 22, 24. And while the British Airways documents reveal the *time* at which the alleged events occurred, they do not say the *location* of those events or whether they occurred "on navigable waters." *Grubart*, 513 U.S. at 534; *Walker*, 727 F.3d at 821.

30. Only after receipt of the subpoena documents from British Airways on February 15, 2022, and through its own plotting and analysis of the aircraft's flight path and position data, was Boeing able to determine that the aircraft was travelling over the Gulf of Maine and St George's Channel during two of the alleged contaminated cabin air events. Those grounds for removal did not appear "affirmatively and unambiguously" on the face of the Complaint or other paper served to Boeing. Therefore, the 30-day clock has not begun to run. *See, e.g.*, *Curry*, 542 F. Supp. 3d at 819 ("if the complaint leaves *any* work for the defendant to do [to determine removability] the removal clock does not start to run"); *Ayotte v. The Boeing Co.*, 316 F. Supp. 3d 1066, 1074 (N.D. Ill 2018) (30-day clock was not triggered by general allegations in complaint, which did not give "'unambiguous' notice to Boeing that it had a right to remove based on federal officer jurisdiction"); *Gross v. FCA U.S., LLC*, 2017 WL 6065234, at *3 (N.D. Ill. Dec. 7, 2017) (police report listing plaintiff's residence did not trigger removal clock because residence is not synonymous with citizenship). Boeing's removal is therefore timely.

31. Further, removal would be timely even if the grounds for removal appeared affirmatively and unambiguously in the documents British Airways produced in response to Plaintiffs' subpoena. Boeing received those documents on February 15, 2022, and it filed this Notice of Removal 27 days later—well within the 30-day window set out in 28 U.S.C. § 1446(b)(3).

32. For all these reasons, this removal is timely.

## IV. Conclusion

WHEREFORE, Boeing hereby removes to this Court the case styled *Benussi v. The Boeing Co.*, currently pending in the Circuit Court of Cook County, Illinois County Department, Law Division, as Case No. 2021 L 007305.

Dated: March 14, 2022  Respectfully submitted,

By: /s/ *Kathleen Stetsko*

| **Perkins Coie LLP** | **Winston & Strawn LLP** |
|---|---|
| Kathleen A. Stetsko | Dan K. Webb |
| 110 North Wacker | Joseph L. Motto |
| Suite 3400 | 35 W. Wacker Dr. |
| Chicago, Illinois 60606 | Chicago, IL 60601 |
| T. (312) 324-8400 | T. (312) 558-5600 |
| F. (312) 324-9400 | F. (312) 558-5700 |
| KStetsko@perkinscoie.com | DWebb@winston.com |
| | JMotto@winston.com |
| Todd W. Rosencrans | |
| Christopher M. Ledford | Sandra A. Edwards |
| 1201 Third Avenue, Suite 4900 | 101 California Street |
| Seattle, WA 98101 | 35th Floor |
| T. (206) 359-8000 | San Francisco, CA 94111 |
| F. (206) 359-9000 | T. (415) 591-1000 |
| TRosencrans@perkinscoie.com | F. (415) 591-1400 |
| CLedford@perkinscoie.com | SEdwards@winston.com |

*Attorneys for The Boeing Company*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUCA BENUSSI, HUGH CURRY, HARJOAT FLORA, KAREN MILLS, SUSANNE PEDERSON, AND LOUISE STEELE,<br><br>        Plaintiffs,<br><br>   v.<br><br>THE BOEING COMPANY,<br><br>        Defendant. | No. _____ |

**CERTIFICATE OF SERVICE**

     I, Kathleen A. Stetsko, hereby certify that on March 14, 2022, I served a copy of the foregoing NOTICE OF REMOVAL on counsel for Plaintiffs via email as follows:

| | |
|---|---|
| Joseph A. Power, Jr.<br>Kathryn L. Conway<br>POWER ROGERS, LLP<br>Three First National Plaza<br>70 West Madison Street, 55th Floor<br>Chicago, Illinois 60602<br>(312) 236-9381<br>JoePower@powerrogers.com<br>KConway@powerrogers.com | Zoe B. Littlepage<br>Rainey C. Booth<br>T. Matthew Leckman<br>LITTLEPAGE BOOTH LECKMAN<br>1912 West Main Street<br>Houston, Texas 77098<br>(713) 529-8000<br>Zoe@littlepagebooth.com<br>Rainey@littlepagebooth.com<br>Matt@leckmanlaw.com |

                                                              By: s/ *Kathleen Stetsko*